**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NAOMI HORN, individually, and as**
**Personal Representative of the Estate of**
**RONALD WADSWORTH, and on behalf of**
**the survivors of RONALD WADSWORTH,**
**deceased,**

                                **Plaintiff,**

**-vs-**                                                                                     **Case No.  6:08-cv-18-Orl-19DAB**

**VOLUSIA COUNTY, FLORIDA,**
**PRISON HEALTH SERVICES,**
**INC., DAVID HAGER,**

                                **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1.    Motion of Defendants to Dismiss (Doc. No. 11, filed Jan. 9, 2008); and

2.    Response of Plaintiff to Motion to Dismiss (Doc. No. 19, filed Jan. 21, 2008).[1]

## Background

Plaintiff Naomi Horn filed this suit in her individual capacity and as a representative of the

Estate of Ronald Wadsworth against Defendants Volusia County ("the County"), Prison Health

Services, Inc. ("PHS"), and Dr. David Hager.  (Doc. No. 2, filed Jan. 3, 2008.)  Defendants have

collectively moved to dismiss the case, arguing that Plaintiff failed to properly plead her claims, that

---

[1]    Local Rule 1.05(a) requires all "papers tendered by counsel for filing" to be double-spaced.  Plaintiff's Response to the Motion to Dismiss is single-spaced.  Counsel appearing before this Court are expected to adhere to the Local Rules, and the Court will strike any future non-compliant documents.

sovereign immunity applies, and that Plaintiff failed to follow the pre-suit requirements of Florida's Medical Negligence Act ("FMNA").  (Doc. No. 11 at 3-14.)

The Complaint alleges that Plaintiff is the mother of Ronald Wadsworth, a mentally disabled man who suffered from Parkinson's disease. (Doc. 2 at ¶¶ 9, 13.)  On February 7, 2007, Wadsworth was admitted to the Volusia County Branch Jail and placed under the care of Defendants.  (*Id.* ¶ 12.)  During his stay at the jail, Wadsworth lost over forty pounds, became severely dehydrated, did not receive proper medication, developed Decubitus ulcers, and contracted MRSA, a type of staph infection.  (*Id.* ¶ 14.)  The combination of these conditions led to his death.[2]

Plaintiff filed a seven count Complaint against Defendants on December 17, 2007.[3]  Count I of the Complaint is entitled "Wrongful Death Against Volusia County." (*Id.* at ¶¶ 17-36.)  The Count is further split into four subsections.  Subsection I(A), "Negligence in Providing Appropriate Care," alleges that the County failed to provide "competent medical attention" and did not "protect" Wadsworth's "health, safety, and welfare."  (*Id.* ¶ 21.)  Subsection I(B), "Negligent Hiring of Defendant, PHS," alleges that the County hired PHS despite the company's reputation for providing poor care.  (*Id.* at ¶¶ 28-29.)  Subsection I(C), "Negligent Retention of Defendant, PHS," alleges that the County retained PHS notwithstanding the numerous complaints filed against the company.  (*Id.* ¶ 31.)  Lastly, subsection I(D), "Negligent Supervision of Defendant, PHS," alleges that the County failed to exercise reasonable care in monitoring and supervising PHS and its personnel. (*Id.* at ¶¶ 34-35.)  According to this last subsection, one of the County's specific shortcomings was its failure

---

[2]     It is unclear whether Wadsworth died in jail or after being discharged.  Regarding this issue, the Complaint states, "Ronald Wadsworth was functioning and coherent upon admission into the Branch Jail, and he left the jail as a non functioning human being."  (Doc. No. 2 ¶ 16.)

[3]     The Complaint was originally filed in state court. Defendants removed to this Court on January 3, 2008.  (Doc. No. 1, filed Jan. 3, 2008).

to "implement appropriate procedures designed to ensure that the assigned personnel were doing their job properly . . . ."  (*Id.* ¶ 35.)

Count II of the Complaint is entitled "Violation of Rights Guaranteed by the Constitution of the United States VS. Volusia County."  (*Id.* at ¶¶ 37-45.)  In this count, Plaintiff asserts a claim under 42 U.S.C. section 1983 and alleges that the County had "deliberate indifference to the serious medical, health, safety, and welfare needs" of Wadsworth.  (*Id.* ¶ 41.)  Plaintiff also alleges that the County showed "deliberate indifference in hiring PHS despite its vast history of malfeasance. . . ." (*Id.* ¶ 42.)  Plaintiff does not specify a federal law or constitutional provision upon which the claim is based.  (*See id.* at ¶¶ 37-25.)

Count III is entitled "Wrongful Death Against PHS" and is broken into the same four subsections as Count I.  (*Id.* at ¶¶ 46-66.)  Count III(A), "Negligence in Providing Appropriate Care," makes the same allegations as Count I(A) with respect to PHS.  (*Id.* at ¶¶ 46-55.) Count III(B), "Negligent Hiring of David Hager, M.D.," alleges that PHS hired Dr. Hager despite previous lawsuits and complaints filed against the doctor.  (*Id.* ¶ 58.)  Count III(C), "Negligent Retention of David Hager, M.D.," alleges that PHS retained Dr. Hager despite numerous complaints against him. (*Id.* ¶ 61.)  Count III(D), "Negligent Supervision of Personnel," alleges that PHS failed to adequately supervise Dr. Hager and did not implement procedures to ensure that Dr. Hager and his staff provided the inmates with proper medical care.  (*Id.* at ¶¶ 64-65.)

Count IV is entitled "Violation of Rights Guaranteed by the Constitution of the United States VS. PHS."  (*Id.* at ¶¶ 67-74.)  In this count, Plaintiff asserts a claim under 42 U.S.C. section 1983 and alleges that PHS had "deliberate indifference to the serious medical, health, safety, and welfare needs" of Wadsworth.  (*Id.* ¶ 70.)  Further, PHS "showed deliberate indifference in the hiring of

Defendant, David Hager . . . . " (*Id.* ¶ 72.)   Similar to Count II, this count does not specify the federal law or constitutional provision upon which it is based.  (*Id.* at ¶¶ 67-74.)

Count V is entitled "Gross Negligence vs. Prison Health Services." (*Id.* at ¶¶ 75-79.)  Here, Plaintiff alleges that PHS failed to meet the "prevailing standard of care of the community" in twelve aspects of Wadsworth's care.  (*Id.* ¶ 77.)  These aspects include providing hydration, providing sustenance, administering proper medication, provision of a clean environment, and failing to allow the entry of "outside medical personnel." (*Id.*)  Plaintiff further alleges that PHS exhibited wanton and willful disregard of Wadsworth's rights.  (*Id.*)

Count VI is entitled "Wrongful Death vs. David Hager, M.D." (*Id.* at ¶¶ 80-87.)  The Complaint alleges that Dr. Hager owed Wadsworth a duty of care to provide a "reasonably safe environment" during detainment, as well as a "duty to exercise reasonable care in monitoring and supervision of all PHS staff serving under [Dr. Hager's] direct authority." (*Id.* ¶ 83.)

Finally, Count VII is entitled "Violation of the Rights Guaranteed by the Constitution of the United States VS. David Hager, M.D." (*Id.* at ¶¶ 88-95.)  Similar to Counts IV and II, Plaintiff asserts a claim under 42 U.S.C. section 1983 and alleges that Dr. Hager had "deliberate indifference to the serious medical, health, safety, and welfare needs" of Wadsworth and "showed deliberate indifference in failing to supervise the staff in his charge . . . ." (*Id.* at ¶¶ 91-92.)  Plaintiff does not specify a federal law or constitutional provision upon which her claim relies.  (*See id.* at ¶¶ 88-95.)

### Standard of Review

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that can be drawn from the complaint. *Jackson v. Okaloosa County,*

*Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Furthermore, the Court must generally limit its consideration to the complaint and written instruments attached as exhibits.[4]  Fed R. Civ. P. 12(d); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*,127 S.Ct. 1955, 1969 (2007).

**Anaylsis**

## I.      Count I: State Law Claims Against the County

Defendants argue that Count I must be dismissed for two reasons.  First, Defendants contend that the Count attempts to simultaneously assert four causes of action and therefore violates Federal Rule of Civil Procedure 10(b).  (Doc. No. 11 at 3.)  Second, the County argues that it is entitled to sovereign immunity for Plaintiff's state law claims.  (*Id.*)

### A.      Federal Rule of Civil Procedure 10(b)

According to Federal Rule of Civil Procedure 10(b), "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense."  Count I does not violate this standard.  First,

---

[4]        Defendants attached a copy of PHS's contract with the County to their Motion to Dismiss.  Although the contract is not attached to Plaintiff's Complaint, the Court may consider this document to the extent it is referred to in the Complaint and is "central" to Plaintiff's claims. *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (courts may consider documents that are referred to in the complaint and central to the plaintiff's claims without converting the motion to dismiss into a motion for summary judgment).  Plaintiff refers to the contract between PHS and the County in two contexts: first, regarding the issue of whether PHS is subject to the FMNA, and second, regarding the issue of whether PHS is an "agent" of the County for purposes of sovereign immunity.  (Doc. No. 2 at ¶¶ 4, 11.)  As explained below, both of these issues are central to Plaintiff's claims.   Thus, the Court will consider relevant portions of the contract.

the four "subsections" in Count I are related to the same transaction and occurrence: Wadsworth's stay at the jail and his death. Second, Plaintiff's presentation of Count I is sufficiently clear to put the County on notice of the claims against it. *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (holding that Federal Rules of Procedure 8(a) and 10(b) work together to "require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading"). Each subsection lays out a particular legal theory of liability and makes related factual allegations. Thus, Count I complies with the requirements of Rule 10(b).

## B.    Sovereign Immunity

The Florida Legislature has authorized a limited waiver of state sovereign immunity in tort for personal injury, wrongful death, and loss of or injury to property. Fla. Stat. § 768.28 (2007). The wavier specifically includes counties. *Id.* However, the Florida Supreme Court has determined that the waiver does not permit liability for discretionary, planning-level governmental functions. *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1022 (Fla. 1979). To determine whether a governmental action falls within this category, the Court established a four part test:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* at 1019. If these questions "can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom." *Id.*

As the four part test suggests, the answers to the above questions are necessarily fact intensive, and it is difficult to extrapolate general rules from the body of case law. *See Storm v. Town of Ponce Inlet*, 866 So. 2d 713, 718 (Fla. 5th DCA 2004) (citing William N. Drake, Jr. & Thomas A. Bustin, *Governmental Tort Liability in Florida: A Tangled Web*, 77 Fla. Bar. J. 8 (2003)). For example, the decision to retain a government employee may be "discretionary" if the employee is a "top executive appointee" and the decision was made by a town council. *Storm*, 866 So. 2d at 718-19. By contrast, a ministerial employee's decision to retain another lower-level employee will most likely not fall within the discretionary category. *See id.*

Drawing all inferences in favor of Plaintiff, it is possible that decisions to hire, retain, and supervise PHS were made in a manner that does not implicate the discretionary exception. Significantly, the identity of the decision-maker and manner of decision-making are still unknown. *See Storm*, 866 So. 2d at 718-19 (top executive employee was retained through the decision of a town council). Furthermore, drawing on the above four-part test, it is doubtful that the County's alleged failure to provide Wadsworth with sufficient hydration, sustenance, bedding, medication, and monitoring falls into the category of a "discretionary" decision. Specifically, there is no "policy evaluation" involved in providing a prisoner with these necessities. *Commercial Carrier Corp.*, 371 So. 2d at 1019.

Accordingly, Count I states a claim against the County upon which relief can be granted.

II.      **Counts II, IV, and VII: Federal Claims against the County, PHS, and Dr. Hager**

Defendants next argue that Plaintiff's claims under 42 U.S.C. section 1983 must be dismissed because they fail to allege a violation of federal law.  (Doc. No. 11 at 6-8.)  Plaintiff responds that a cause of action may be stated under section 1983 by merely alleging the deprivation of federal rights by a person acting under the color of state law.  (Doc. No. 19 at 5 (citing *Wilson v. County of Orange*, 881 So. 2d 625, 629 (Fla. 5th DCA 2004).)  Furthermore, Plaintiff contends that she has met the requirements of establishing municipal liability by alleging the County's awareness of a substantial risk of harm to the prisoners at its jail.  (*Id.* at 6.)

Defendants are correct.  Plaintiff's section 1983 claims are facially deficient due to their failure to allege the violation of a specific federal right.  Even though Plaintiff identifies the Constitutional rights at issue in her response to Defendants' Motion, the case law requires that these federal rights be named in the Complaint.  *See Albright v. Oliver*, 510 U.S. 266, 271, 275 (1994) (affirming the dismissal of a complaint for failing to allege a specific federal right that was violated); *Upsher v. Grosse Point Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002); *Ellis v. Todd*, No. 8:07-cv-1101-T-17MSS, 2007 WL 4358268, *4 (M.D. Fla. Dec. 10, 2007).

Accordingly, Plaintiff's section 1983 claims against the County must be dismissed without prejudice.

III.     **Counts III, IV, V, VI, and VII: Claims Against PHS and Dr. Hager**

A.      **Counts III, V, and VI: State Law Claims Against PHS and Dr. Hager**

Defendants argue that the claims in Counts III, V, and VI must be dismissed for failing to follow the pre-suit procedures of the FMNA, and because section 768.28(9) of the Florida Statutes provides PHS and Dr. Hager, as agents of the state, with immunity from suit.  (Doc. No. 11 at 8.)

In addition, Defendants argue that "Count five is a 'gross negligence claim' against PHS, and it is therefore redundant to the wrongful death claim in Count three."[5]  (*Id.*)

Plaintiff responds by conceding that she did not follow the pre-suit procedures in the FMNA. However, she argues that the FMNA is inapplicable to the types of actions and parties at issue in this case.  (Doc. No. 19 at 3.)  Moreover, Plaintiff argues that the "gross negligence" claim is not redundant to her other state law claims because there is an exception to the immunity provided by section 768.28(9) for actions taken in bad faith, malice, or with wanton and willful disregard.  (*Id.* at 5.)  By making these allegations, Plaintiff argues, Count V avoids sovereign immunity and is therefore not redundant to Count III.  (*Id.*)

### 1.      Sovereign Immunity for Agents of the State

Section 768.28(9) of the Florida Statutes provides that:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Defendants argue that they are immune under section 768.28(9) because they are "agents" of the state.  (Doc. No. 11 at 12.)  According to Defendants, the Florida Supreme Court has extended immunity under section 768.28(9) to independent contractors where the contractor also qualifies as an "agent" of the state under the Restatement (Second) of Agency § 14N (1958).  *Stoll v. Noel*, 694 So. 2d 701, 703 (Fla. 1997).  Under this section: "One who contracts to act on behalf of another and

---

[5]      Defendants also argue that Count III "contains several other claims" and must be dismissed for the same reasons as Count I.  (Doc. No. 11 at 8.)  For the reasons stated above with respect to Count I, the Court rejects this argument.

subject to the other's control except with respect to his physical conduct is an agent and also an

independent contractor." Restatement (Second) of Agency § 14N.   In *Stoll*, the Court found that a

group of doctors were "agents" of the state, and therefore immune under section 768.28(9), because

their (1) employment contract required them to abide by state guidelines; and (2) the state retained

ultimate authority over their patients' care. *Stoll*, 694 So. 2d at 703.  Defendants argue that the facts

of this case are "legally indistinguishable" from *Stoll* and therefore require the same result.  (Doc.

No. 11 at 12.)

In support, Defendants point to Section 2.03 of the contract, entitled "Agency Relationship."

(*Id.*)  According to this section:

> Subject to the terms and conditions of this Agreement, the County hereby appoints
> the Contractor, including its officers and employees, as the County's agent for the
> purpose of providing medical services to Inmates. Such agency relationship shall be
> applicable to all claims by third parties other than workers compensation claims or
> any other claims arising out of Contractor's relationship with its own employees.
> This appointment shall not extend to Contractor's subcontractors or any other third
> party medical provider. Such agency shall not extend to the performance of any act
> of a director, officer, or employee of the Contractor for which the County would not
> by law be responsible if the County were to directly perform the duties of the
> Contractor. The Contractor accepts such appointment under the terms and conditions
> set forth herein.

(Doc. No. 11-2 at 10.)  In addition, Section 2.05 is entitled "Standard of Care" and requires PHS to

meet or exceed several standards of care, including the Florida Model Jail Standards.  (*Id.* at 11.)

Section 2.06 is entitled "Change in the Scope of Services" and allows the County to alter, delete, and

revise the scope of services provided by PHS and its staff.  (*Id.*)

These contractual provisions are sufficient to establish that PHS and Dr. Hager are "agents"

of the state within the meaning of section 768.28(9).  *Stoll*, 694 So. 2d at 703.  Similar to *Stoll*, PHS

and Dr. Hager are required to follow state guidelines, and the state has authority over the scope of

their work.  Moreover, Section 2.03 of the contract demonstrates that the parties expressly intended to create an agency relationship, apparently for the very purpose of bringing PHS and Dr. Hager under the protection of section 768.28(9).[6]  Finally, Plaintiff does not point to any allegation in the Complaint or other provision in the Contract that can be construed to the contrary.

Accordingly, PHS and Dr. Hager can only be liable for "bad faith, malice, or . . . wanton and willful disregard" for human life.  Fla. Stat. § 768.28(9).  As Plaintiff implicitly concedes, Counts III and VI do not allege the type of gross negligence capable of avoiding immunity under section 768.28(9).  (Doc. No. 19 at 5; Doc. No. 2 at ¶¶ 46-66, ¶¶ 80-87.)  Accordingly, Counts III and VI must be dismissed without prejudice.

### 2.    Applicability of the FMNA

Even though immunity under section 768.28(9) does not apply to the conduct alleged in Count V, the question remains whether Plaintiff was required to follow the FMNA's pre-suit procedures for purposes of asserting the gross negligence claims in Count V.

Claims for medical negligence or medical malpractice are subject to the pre-suit screening requirements of Florida Statutes, chapter 766.  *See* Fla. Stat. 766.106(2)(a); *Corbo v. Garcia*, 949 So. 2d 366, 368 (Fla. 2d DCA 2007).  Section 766.106(1)(a) of the Florida Statutes defines a claim for "medical negligence" or "medical malpractice" as "a claim arising out of the rendering of, or the failure to render, medical care or services."  *J.B. v. Sacred Heart Hosp.*, 635 So. 2d 945, 948-49 (Fla.1994).  To qualify as a medical malpractice claim, the wrongful act alleged "must be directly

---

[6]    Section 2.03 explains "that the agency relationship shall be applicable to all claims by third parties other than workers compensation claims or any other claims arising out of Contractor's relationship with its own employees."  (Doc. No. 11-2 at 10.)  The Court passes no judgment on whether this declaration of intent to insulate PHS and its staff from third-party liability would be effective absent the other contractual provisions subjecting PHS to the County's control.

related to the improper application of medical services and the use of professional judgment or skill." *Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468, 469 (Fla. 3d DCA 2006) (citing *Lynn v. Mount Sinai Med. Ctr., Inc.*, 692 So. 2d 1002, 1003 (Fla. 3d DCA 1997)). Furthermore, the alleged injury "must be a direct result of receiving medical care or treatment by the healthcare provider." *Id.* (citing *Goldman v. Halifax Med. Ctr., Inc.*, 662 So. 2d 367, 371 (Fla. 5th DCA 1995)). The failure to follow the pre-suit screening requirements of Florida Statutes chapter 766 precludes a plaintiff from relying on the medical negligence standard of care in proving her case. *Fassy v. Crowley*, 884 So. 2d 359, 364 (Fla. 2d DCA 2004). However, a plaintiff is not barred from asserting an ordinary negligence claim as long as she does not rely on the medical negligence standard of care. *Feifer v. Galen of Fla., Inc.*, 685 So. 2d 882, 885 (Fla. 2d DCA 1996).

In Count V, Plaintiff alleges that "[a]long with the duty to provide medical care, PHS [] had a duty to make sure that the inmates in its care were safe and well provided for." (Doc. No. 2 ¶ 76.) Plaintiff next alleges that PHS "breached its duty of care to the extent that it failed to reach the prevailing standard of care in the community in which it was being provided in the following respects . . . ." (*Id.* ¶ 77.) The Count then lists twelve aspects of Wadsworth's care, including providing hydration, providing sustenance, administering proper medication, providing a clean environment, and failing to allow the entry of "outside medical personnel." (*Id.*)

The aspects of Wadsworth's care listed in Count V do not necessarily involve the "application of medical services and the use of professional judgment or skill." As a result, it is feasible for Plaintiff to prove her claims without turning to the medical standard of care. For example, providing a person with access to medicine that has already been prescribed does not necessarily require "professional judgment or skill." *See, e.g., Horst v. Parker*, No.

6:07-cv-612-Orl-19KRS, 2007 WL 4557243, *3 (M.D. Fla. Dec. 21, 2007).   On the other hand, choosing and prescribing the proper medication for a person would likely require the use of "professional judgment or skill."   *See id.* (distinguishing between providing access to medicine already prescribed and providing medicine as part of medical care).   Construing all allegations of the Complaint in the light most favorable to Plaintiff, Count V states a claim for ordinary, non-medical negligence that may be able to be proved without relying on the medical standard of care.

## IV.    Plaintiff's Individual Claims

The introductory paragraph of Plaintiff's Complaint explains that she is suing Defendants both "individually" and in her representative capacity.   (Doc. No. 2.)   Plaintiff does not explain whether her various claims are brought in her representative capacity, in her individual capacity, or in both capacities.   Defendants have moved for dismissal of all individual claims, arguing that no right to an individual claim exists under Florida's wrongful death statute and that Plaintiff lacks standing to assert a section 1983 claim on her own behalf.   (Doc. No. 11 at 13-14 (citing *Thompson v. Hodson*, 835 So. 2d 941, 949 (Fla. 1st DCA 2002); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).   Plaintiff does not address Defendants' arguments in her Response, and she does not otherwise address the propriety of her individual claims.   Furthermore, aside from the introductory paragraph and caption of the Complaint, there is no indication that Plaintiff actually intends to assert an individual capacity claim in this case.   Accordingly, the Court will presume that she does not oppose this ground for dismissal.   *See*, *e.g.*, *Copley v. Fla. Physicians Inc. Co.*, No. 8:07-cv-2100-T-30TGW, 2008 WL 544875, *2 (M.D. Fla. Feb. 26, 2008) ("[A]s Plaintiff has failed to respond to the instant motion, it appears to the Court that she does not take issue with Defendant's argument . . . ."); *Edmeon v. Practice Servs., Inc. v. Final Support, Inc.*, No.

-13-

8:06-cv-1172-T-24TBM, 2006 WL 3097281, *1 (M.D. Fla. 2006) ("Defendant failed to respond to this argument. Accordingly, the Court construes this part of the motion as unopposed by Defendant and grants the motion as to Count 3.") Therefore, Counts I, II, III, IV, V, VI, and VII are dismissed to the extent they are brought by Plaintiff in her individual capacity.

### Conclusion

Based on the foregoing, the Motion of Defendants to Dismiss (Doc. No. 11, filed Jan. 9, 2008) is **GRANTED** in part and **DENIED** in part as follows: Counts II, III, IV, VI, VII, and all individually-asserted claims are **DISMISSED** without prejudice. Plaintiff has ten (10) days from the date of this Order to submit an Amended Complaint which complies with this Order. If Plaintiff elects not to file an Amended Complaint, the action will proceed on the Complaint pending before the Court as stated in this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on April _9___, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record